**TECHNICAL, INC.**

v.

**ALLPAX PRODUCTS, INC., Steve B. Hudson, Tim Haley, Michael F. Blattner, and D. Randolph Waesche.**

Civ. A. No. 90–0872.

United States District Court,
E.D. Louisiana,
New Orleans Division.

March 9, 1992.

---

Stephen R. Doody, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Robert E. Barkley, Jr., Barkley & White, New Orleans, La., for Technical, Inc., Leon J. Cabes, Jr., Louis Bonnecaze, Jr. and David K. Park.

Clave E. Gill, Patricia Anne F. Bollman, Gill & Fabacher, New Orleans, La., Harold J. Birch, Scott F. Partridge, Banner, Birch, McKie & Beckett, Washington, D.C., for Allpax Products, Inc., Steve B. Hudson, Tim Haley, Michael F. Blattner and D. Randolph Waesche.

Cecil L. Smith, pro se.

## ORDER AND REASONS

ARCENEAUX, District Judge.

Plaintiff, TechniCAL, Inc., and counter-defendants, Leon J. Cabes, Jr., Louis Bonnecaze, Jr., and David K. Park (collectively referred to hereinafter as "TechniCAL"), filed a motion on December 11, 1991, to reopen this case and to rescind the settlement agreement. Defendants, Allpax Products, Inc., Steve B. Hudson, Timothy A. Haley, Michael F. Blattner, D. Randolph Waesche, and Resource Management, Inc. (collectively referred to hereinafter as "Allpax"), have opposed TechniCAL's motion on the merits and filed a motion on January

31, 1992, to bar the reopening of this case on procedural grounds. Having reviewed the memoranda, the applicable law, and the record, the court now rules.

## BACKGROUND

Plaintiff initially brought this action on March 9, 1990, seeking both monetary damages and injunctive relief for a variety of claims involving computerized controllers used with retorts.[1] Because it has detailed the factual background extensively in supplemental reasons ruling on TechniCAL's application for a preliminary injunction, the court only will recite those facts relevant to the issues before it.[2]

A settlement of this matter took place after extensive negotiations and resulted in the signing of a document entitled "Principles of Agreement" on August 31, 1990. After being informed of this settlement, the court entered a sixty-day order on September 4, 1990, closing the case as compromised and settled.

The terms of this settlement included an agreement by Allpax to pay TechniCAL $150,000. Allpax agreed to pay $75,000 immediately and $5,000 per retort sold by Allpax. TechniCAL claims that, in late 1991 after receiving approximately $100,-000, Allpax apparently began withholding $5,000 payments allegedly due to it.

The Principles of Agreement provided that any disputes would be submitted to arbitration.[3] TechniCAL, therefore, apparently informed Allpax that it would proceed to arbitration if Allpax did not begin making payments again. Prior thereto, Allpax invoked the arbitration clause and claimed that TechniCAL breached paragraph 9 of the settlement agreement by competing in the new retort market in North America.[4]

TechniCAL, however, has decided to attack the validity of the Principles of Agreement in this court prior to arbitrating. First, TechniCAL argues that, because no meeting of the minds took place as to paragraph 9, the Principles of Agreement should be rescinded as void *ab initio*. In the alternative, this party posits that the agreement should be declared null and void because its terms involve an illegal market division between competitors.

Allpax opposes both contentions on the merits. In addition, Allpax claims that TechniCAL's motion should be barred as untimely under Rule 60(b) of the Federal Rules of Civil Procedure. The court now turns to the merits of the arguments.

## DISCUSSION

### 1. Rule 60(b): A Bar to Relief?

Allpax contends that TechniCAL failed to bring its motion to reopen within the one-year period under Rule 60(b)(1) for "mistake" or, in the alternative, within a reasonable time under Rule 60(b)(6). TechniCAL replies that its motion has been brought under Rule 60(b)(6) within a reasonable amount of time from its discovery that no meeting of the minds took place and that the agreement potentially violates antitrust laws.

Rule 60(b)(1) provides for relief from a final order because of "mistake, inadvertence, surprise, or excusable neglect...." Fed.R.Civ.P. 60(b)(1). The term "mistake" evades precise meaning in the context of this rule. The court, even recognizing this fact, finds that the case law (or lack thereof) does not support the application of Rule 60(b)(1) to this case.

The court finds no jurisprudence where "mistake" under Rule 60(b)(1) has been applied to factual circumstances even remote-

1. Retorts are large vessels used by the food processing industry to "cook" or sterilize multiple containers of food.

2. See *TechniCAL, Inc. v. Allpax Products, Inc.,* No. 90–0872, 1990 U.S. Dist. LEXIS 3712, 1990 WL 41924 (E.D.La. Mar. 18, 1990).

3. The parties apparently agree that the court must decide whether a valid settlement agree-

ment exists prior to the arbitration proceeding. Based on the court's review of the law, it cannot disagree.

4. Paragraph 9 of the Principles of Agreement states: "Technical agrees to stay out of the new retort market in North America for the term of the license in Paragraph 1 and any extensions thereof." This paragraph represents the focus of the parties' present dispute.

ly similar to those at hand (and Allpax cites no such case law). Moreover, TechniCAL announces in its reply to Allpax's motion that it seeks relief under Rule 60(b)(6). Finally, the case law supports consideration of relief from a settlement under Rule 60(b)(6). *See Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F.2d 599 (5th Cir.1986). Under these circumstances, the court finds Allpax's arguments in this regard and its attempt to apply the one-year prescriptive period of Rule 60(b)(1) to be totally devoid of merit.

■ The court, however, finds merit in Allpax's arguments that TechniCAL's motion has not been brought within a "reasonable time" under Rule 60(b)(6). Rule 60(b)(6) provides for relief from a final order for "any other reason justifying relief...." Fed.R.Civ.P. 60(b)(6). This rule further mandates that any motion for relief be made within a reasonable time.

The United States Supreme Court has stated with regard to this rule that, "In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in the courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 614–15, 69 S.Ct. 384, 390–91, 93 L.Ed. 1099 (1949); *see Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). So, for this court to grant TechniCAL relief, it must find that such action would accomplish justice and that it has been requested within a reasonable time.

The court will address TechniCAL's asserted grounds for relief on the merits in detail below. But, as to the procedural attack on the relief sought, the court specifically finds that such relief would not accomplish justice in this case. Furthermore, even if such relief would accomplish justice, TechniCAL has not made application for it within a reasonable time.

The parties settled this case and signed the Principles of Agreement in August 1990. TechniCAL seeks relief approximately fifteen months after knowingly and wilfully entering such agreement. Techni-

CAL's arguments that the lack of a meeting of the minds did not become apparent until October 28, 1991, simply bears no weight with the court. Furthermore, the discovery of possible antitrust ramifications bears even less weight.

The real reason for TechniCAL's motion becomes readily apparent from the deposition testimony of counterdefendant Leon J. Cabes, Jr., the president of TechniCAL. In his deposition, Mr. Cabes states that he and his attorney discussed ways of "getting back into court on the settlement agreement." Moreover, a thorough review of Mr. Cabes' deposition and the other evidence submitted by TechniCAL demonstrates dissatisfaction with the settlement and, consequently, a lack of genuineness in TechniCAL's asserted grounds for relief and in its reasons for the delay in seeking such relief.

The court, therefore, finds that justice would not be accomplished by granting relief and, even if it would, that such relief has not been requested within the reasonable time afforded by Rule 60(b)(6). In so doing, the court, however, recognizes that TechniCAL's arguments relating to the alleged absolute nullity of the settlement agreement deserve attention. Consequently, in an abundance of caution, the court will consider TechniCAL's motion on the merits.

### 2. Meeting of the Minds

■ TechniCAL, in its motion, argues two grounds for relief from this settlement. The first such argument posits that no meeting of the minds took place as to paragraph 9 of the Principles of Agreement.

Paragraph 9 (as noted previously) states that, "Technical agrees to stay out of the new retort market in North America for the term of the license in Paragraph 1 and any extensions thereof." TechniCAL and Allpax apparently do not agree as to the meaning of this provision. More particularly, the parties disagree as to whether "to stay out of the new retort market" totally prohibits TechniCAL from even "assisting" third parties in the manufacturing

and marketing of new retorts. According to TechniCAL, such disagreement (and the parol evidence offered in support thereof) demonstrates that no meeting of minds took place in confecting this settlement. Consequently, TechniCAL concludes that the Principles of Agreement should be declared null and this case should be reopened.

■ The court, however, finds that the controlling law does not support TechniCAL's position. In this case, the settlement agreement must be interpreted under Louisiana law. *See Stipelcovich*, 805 F.2d at 603 n. 4. Louisiana law regards a compromise or settlement of a lawsuit as a contract. La.C.C. art. 3071; *see Parich v. State Farm Mutual Ins. Co.*, 919 F.2d 906, 913 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991). The court, therefore, must interpret the Principles of Agreement under Louisiana contract law.[5]

■ The Fifth Circuit in *Parich* noted the following five requirements for a valid compromise under article 3071 of the Louisiana Civil Code: "(1) a writing; (2) mutual consent to adjust differences; (3) the hope of gain from the agreement; (4) consideration; and, (5) performance by the parties in the agreed manner." *Id.* In this case, the parties do not dispute the existence of a writing, the hope of gain, and consideration. Both parties do dispute performance but, assuming that a valid agreement exists, performance will be determined by arbitration. As a consequence, the only relevant dispute between these parties focuses on mutual consent because without such consent the settlement agreement will be null and void.

■ Mutual consent, or a meeting of the minds, however, only becomes relevant where the agreement contains ambiguous terms. As the *Parich* court further noted, a valid compromise in Louisiana must be preceded by

> a meeting of the minds between the parties as to what they intended when the compromise was reached.... A compromise agreement must therefore be unambiguous, perfect and complete in itself so that nothing is left for ascertainment by parol proof.... Finally, ... a writing will not be considered a compromise if the court must receive parol evidence to reach that conclusion....

*Parich*, 919 F.2d at 914 (citations omitted). Contrary to TechniCAL's assertions in this case, the court finds the disputed provision to be clear and unambiguous. As a result, it does not become necessary to consider the parol evidence regarding the intent behind paragraph 9 and, in particular, the parties' allegedly divergent interpretations of its effect.[6]

Paragraph 9 clearly precludes TechniCAL from entering the new retort market in any manner. TechniCAL would have the court believe that such provision should be interpreted to mean that it simply cannot manufacture or market its own retorts. If such were the case, then the lawyers in this action certainly could have worded the provision accordingly.[7] The lawyers, however,

---

5. One Louisiana court recently espoused the law governing interpretation of contracts in Louisiana most succinctly by stating, in part:

   Contracts have the effect of law on the parties thereto and must be performed in good faith. La.C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. La.C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La.C.C. art. 2046.

   *Carter v. BRMAP*, 591 So.2d 1184, 1187 (La.Ct. App.1991). As discussed herein, the words in paragraph 9 of the Principles of Agreement are "clear and explicit" and certainly do not lead to any "absurd" results.

6. The court specifically notes that it has not considered the parol evidence offered by the parties to interpret this provision. But, in rendering this opinion, the court obviously has viewed this evidence. In so doing, the court also specifically finds that the testimony and documents relied upon by TechniCAL fail to support its assertions that no meeting of the minds took place. The court finds it incredible that TechniCAL (through its lawyers and officers) misunderstood the meaning of paragraph 9 in light of the lengthy and complicated negotiations leading up to the settlement agreement.

7. The attorneys in this matter clearly do not lack a command of the English language as evidenced by the volumes of paper produced by them.

did not utilize different verbiage and, more importantly, the court finds that this provision clearly and unambiguously prohibits TechniCAL from competing in the new retort market.[8]

The court, therefore, finds that the provision in dispute does not lend itself to consideration of the parol evidence in this case and the assertion that no meeting of the minds took place. In the court's view, to "stay out" of a "market" sets forth a clear and unambiguous prohibition against TechniCAL manufacturing, marketing, and/or selling its own or a third party's new retorts (or even "assisting" another company to do so) unless otherwise licensed by Allpax.[9]

### 3. Antitrust

TechniCAL's second and final attack on the Principles of Agreement focuses on a potential violation of antitrust laws. The court, however, finds such attack to be without merit.

■ TechniCAL, in making this argument, asserts that Allpax and it compete in the retort market by making and selling computerized controllers as well as computer hardware and software. TechniCAL continues that, if the court accepts Allpax's interpretation, then these parties effectively divided the retort market into old and new.[10] Consequently, TechniCAL concludes that the Principles of Agreement promotes a horizontal market division and represents a per se violation of section 1 of the Sherman Anti–Trust Act, 15 U.S.C. § 1 (1988).[11]

Section 1 of the Sherman Anti–Trust Act clearly prohibits restraint of trade. *See* 15 U.S.C. § 1. In order to sustain its claim of a horizontal market division under this act, TechniCAL must first establish that Allpax and it were actual or potential competitors at the time these parties entered the Principles of Agreement. *Transource Int'l, Inc. v. Trinity Indus., Inc.,* 725 F.2d 274, 280 (5th Cir.1984); *see Otter Tail Power Co. v. United States,* 410 U.S. 366, 377, 93 S.Ct. 1022, 1029, 35 L.Ed.2d 359 (1973). The evidence before the court, however, establishes that, at the time the parties settled this action, TechniCAL did not participate in the manufacturing, selling, or marketing of new retorts either directly or indirectly through third parties. Moreover, TechniCAL did not have any intention of doing so.[12] Consequently, the court finds adequate support in the record to refute TechniCAL's claims that the parties have created a horizontal market division.

■ TechniCAL and Allpax, therefore, must be considered to be vertical competitors. *See Transource,* 725 F.2d at 280; *Muenster Butane, Inc. v. Stewart Co.,* 651 F.2d 292, 295 (5th Cir. Unit A July 1981). As such, the rule of reason approach applies to their arrangement. *See Lektro–Vend Corp. v. Vendo Co.,* 660 F.2d 255, 265 (7th Cir.1981), *cert. denied,* 455 U.S.

**8.** Both TechniCAL and Allpax, however, agree that paragraph 9 does not prohibit TechniCAL from selling or installing its controller for use with new retorts. The court finds this interpretation to be the clear and unambiguous effect of paragraph 9.

**9.** The court further notes that, even if error could be found, such error (or, for that matter, any vice of consent) must relate to a principal cause of the contract. *See Saunders v. New Orleans Pub. Serv., Inc.,* 387 So.2d 603, 605 (La.1980). While TechniCAL obviously would disagree, the court fails to find that the error alleged was related to the principal cause of this settlement agreement.

**10.** The court does not necessarily agree with TechniCAL's version of Allpax's interpretation of paragraph 9 but repeats it for purposes of this discussion.

**11.** TechniCAL also posits that even its narrower interpretation of the Principles of Agreement may violate the Sherman Anti–Trust Act. This narrower interpretation concludes that TechniCAL may market and sell retorts manufactured by third parties *but not its own.* The court finds this argument to be as unpersuasive as TechniCAL's first hypothesis and will not address it in depth.

**12.** The record clearly demonstrates that TechniCAL's traditional role in the new retort market has been to provide consulting services and products for the food sterilization industry. These services and products relate to the software and hardware used in the Log Tec computerized controller system. No evidence in the record supports TechniCAL's assertions that it ever directly participated in the manufacturing of new retorts.

921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982); *Muenster Butane, Inc.,* 651 F.2d at 295.[13] The court notes that the rule of reason approach requires the plaintiff to show some adverse affect on competition. *Northwest Power Prods., Inc. v. Omark Indus., Inc.,* 576 F.2d 83, 90 (5th Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979). TechniCAL fails to explicitly allege such adverse affect (much less prove it), and the court further fails to find one in the record before it.[14]

The court, therefore, finds TechniCAL's arguments relating to an alleged unlawful purpose behind the Principles of Agreement to be without merit. These parties were not actual or potential competitors at the time of the settlement and, therefore, did not engage in a per se violation of anti-trust laws by promoting a horizontal market division. Furthermore, even viewing these parties as vertical competitors and assuming that TechniCAL has a right to claim some anti-trust violation, the court finds that the Principles of Agreement accomplish a lawful and reasonable purpose under the circumstances.

## CONCLUSION

This litigation involved complicated issues and numerous hours of time on the part of the litigants, their attorneys, and the court's judicial officers and staff. Now, over a year after entering into a binding settlement, TechniCAL apparently does not like the terms of such agreement. Such dissatisfaction does not create a right to rescind a valid contract under Louisiana law. Furthermore, even if it did, the granting of such motion would not accomplish the ends of justice and TechniCAL has failed to bring its motion to reopen this matter in a timely manner. For the reasons herein, the motion to reopen this matter and rescind the settlement agreement is hereby DENIED and the motion to bar the reopening of this matter is hereby GRANTED.

IT IS SO ORDERED.

---

13. In *Transource International, Inc.,* the court engaged in an analysis of the plaintiff's standing to bring the anti-trust claims prior to reaching the merits of those claims. 725 F.2d at 280–81. Allpax has not specifically questioned TechniCAL's standing to attack the settlement agreement using anti-trust arguments. The court, however, has considered TechniCAL's standing and finds it to be doubtful at best but, in the interest of conclusiveness, will address the claims on the merits.

14. Allpax cites the court to the *Lektro–Vend Corp.* case, which held that covenants not to compete are valid if "(1) ancillary to the main business purpose of a lawful contract, and (2) necessary to protect the covenantee's legitimate property interests...." *Lektro–Vend Corp.,* 660 F.2d at 265. Under such two-part test, TechniCAL also fails to persuade the court that the Principles of Agreement violate any anti-trust prohibitions in light of this litigation and the purposes underlying the settlement agreement.