DURHAM, INC. and Ronald C. Durham,

v.

VANGUARD BANK & TRUST COMPANY.

Civ. A. No. 94–650.

United States District Court,
E.D. Louisiana.

June 28, 1994.

Carl W. Cleveland, Jean Paul Layrisson, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, LA, for plaintiffs.

Robin Bryan Cheatham, Philip Anthony Franco, Sean D. Moore, Adams & Reese, New Orleans, LA, for defendant.

PATRICK E. CARR, District Judge.

This matter is before the Court on defendant's motion to reconsider the Court's Minute Entry of May 18, 1994, denying defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or for summary judgment. Determining in its discretion that oral argument is not necessary, the Court CANCELED the hearing previously scheduled, and considered the matter on the

memoranda. For the reasons that follow, the Court now GRANTS in part the motion to reconsider, and DENIES the motion to dismiss or for summary judgment.

## BACKGROUND

In January of 1990, π (Durham) purchased "Randall Craft" in Pensacola, Fla., for $935,-000. To finance the purchase, Durham executed a mortgage in favor of ?? (Vanguard) for slightly over $1 million. The mortgage covered movable and immovable properties owned by Durham located in Cantonment, Fla., and at 3101 Tulane Ave., New Orleans, plus an assignment of rents, leases and revenues on the Tulane Ave. property. Within six months, Durham's loan was delinquent. Ultimately, Durham filed suit for damages in Florida against Vanguard and others not material to this motion, alleging breach of fiduciary duty and tortious interference with a business contract. Vanguard counterclaimed against Durham to foreclose on the Florida property.

In January, 1991, Vanguard made demand on Durham by filing a Petition for Executory Process in Orleans Parish, to foreclose the mortgage on the Tulane Ave. property. The Florida lawsuit proceeded with a trial date set. In settlement of that lawsuit, a settlement agreement was entered into between Vanguard and Durham, which incorporated a resolution of all the issues between Vanguard and Durham, including Vanguard's suit against Durham in Louisiana. *See* πs' Opposition, ex. A. As part of that settlement agreement, Durham executed a quitclaim deed (i.e., *dation en paiement*, hereinafter "*dation*") in favor of Vanguard, on the Tu-

lane Avenue property. Pursuant to the settlement agreement, Vanguard could only record the *dation* upon Durham's failure to pay Vanguard the sum of $246,091 by November 28, 1992. No payment was made to Vanguard, and Vanguard recorded the *dation* on February 4, 1993.

Durham subsequently filed suit against Vanguard in Louisiana state court alleging breach of contract, detrimental reliance, fraud, negligent misrepresentation, tortious conduct, tortious interference with contract and business relations, and unjust enrichment. According to Durham's complaint, after entering into the settlement agreement, he proceeded to attempt to find a buyer for the Tulane Avenue property, and during the process, he repeatedly received oral assurances from Vanguard's principals (a vice-president of the Bank and its attorney) that the redemption date would be extended, with the additional term that Durham would receive adequate notice of Vanguard's intent to record the *dation*, so he could close any transaction that he had in progress. Durham alleges that when Vanguard learned that a sale of the property for $525,000 to a buyer that he found was imminent, Vanguard recorded the *dation* without notice to him, and subsequently informed him that he could redeem the property for $500,000.

Vanguard removed the suit to this court, and moved to dismiss. The motion to dismiss was based entirely upon the applicability of La.Rev.Stat. § 6:1121, et seq.[1] Vanguard contends that the agreement at issue is a "credit agreement", and alleged oral modifications to a credit agreement are not enforceable under § 1122.[2] Furthermore,

---

**1.** Neither party has raised a choice of law issue, both apparently assuming that Louisiana law applies. Florida has adopted statute almost identical to LSA R.S. 6:1121 et seq., Fla.Stat.Ann. § 687.0304.

**2.** § 1121. Definitions

For purposes of this Chapter, the following terms shall have the following meanings:
(1) "Credit agreement" means an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation.
(2) "Creditor" means a financial institution or any other type of creditor that extends credit

or extends financial accommodation under a credit agreement with a debtor.
(3) "Debtor" means a person or entity that obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor.
(4) "Financial institution" means a bank, savings and loan association, savings banks, or credit union authorized to transact business in this state.
§ 1122. Credit agreements to be in writing
A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.
LSA–R.S. §§ 6:1121 and 1122 (West Supp.1994).

according to Vanguard, it is a financial institution authorized to conduct business in the state pursuant to the statute because La.Rev. Stat. § 12:302 [3] authorizes a foreign bank to conduct certain types of business in the state without being required to procure a certificate of authority to transact business in this state. *See* LSA–R.S. § 6:1121(4).

The Court denied the motion to dismiss, finding that Vanguard could not avail itself of the protection of LSA R.S. § 6:1121 et seq. because it was neither a "creditor" nor a financial institution authorized to transact business in the state within the meaning of the statute. Vanguard moved for reconsideration, and for summary judgment [4].

## DISCUSSION

■ Strong policy considerations dictate that a motion to dismiss for failure to state a claim be viewed with disfavor. *Kaiser Aluminum, Etc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). In considering a motion to dismiss, the court must accept as true all well pleaded facts in the complaint, which is to be liberally construed in favor of the plaintiff; a court may dismiss a claim under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.,* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (other citations omitted).

■ Chapter 16 of Title 6, entitled Credit Agreements—Writing Requirements, was adopted by the Louisiana legislature in 1989. There is scant jurisprudence interpreting the statute. No Louisiana court has addressed the question of whether a foreign bank doing business in Louisiana pursuant to LSA R.S. § 12:302 is also a financial institution authorized to do business pursuant to LSA R.S. § 6:1121(2) and (4). In the absence of controlling state precedent, the federal court must decide a case removed on diversity grounds as it believes the state's highest court would decide it. *Green v. Amerada–Hess Corp.,* 612 F.2d 212, 214 (5th Cir.), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980); *Balliache v. Fru–Con Const. Corp.,* 866 F.2d 798 (5th Cir.1989).

■ This matter is analogous to *Gray and Company v. Stiles,* 221 So.2d 832 (La.App. 1 Cir.1969), a case not previously brought to the Court's attention. In *Gray,* surplus line insurance brokers sued the Administrator of Financial Responsibility Division of the Louisiana Department of Public Safety seeking to enjoin the defendant from refusing to accept certain policies as evidence of financial responsibility. It was the position of the defendant that R.S. § 32:872(C), enacted in 1968, forbade the acceptance of surplus line poli-

---

**3.** Louisiana Revised Statutes Title 12 is Corporation Law. Chapter 3 (sections 301 et seq.) is entitled Foreign Corporation Law. The pertinent sections are as follows:

§ 320. Acts not considered transacting business

Without excluding other activities which may not constitute transacting business in this state, a foreign corporation or a business association shall not be considered to be transacting business in this state, for the purpose of being required to procure a certificate of authority pursuant to R.S. 12:301, by reason of carrying on in this state any one or more of the following activities:

A. Maintaining or defending any action or suit, or any administrative or arbitration proceeding, or affecting the settlement of claims or disputes.

\*　\*　\*　\*　\*　\*

K. If the foreign corporation is a ..., bank or trust company organized under the laws of any state of the United States of America ...:

(4) Acquiring immovable property securing such loans under foreclosure sale or in lieu of foreclosure, and managing, operating, leasing, selling or otherwise disposing of such property.

\*　\*　\*　\*　\*　\*

(6) Owning, modifying, renewing, extending, transferring or foreclosing on such loans, mortgages or mortgage notes, or accepting substitute or additional obligors thereon.

**4.** When the Court considers evidence outside of the pleadings on a motion to dismiss pursuant to F.R.C.P. 12(b)(6), the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. F.R.C.P. 12(c).

cies as evidence of financial responsibility. The provision read as follows:

> No such policy or bond shall be effective under this Section unless issued by an insurance company or surety company authorized to do business in the State of Louisiana. . . .

*Id.* at 833.

The defendant took the position that the words "authorized to do business" as used in the Motor Vehicle Safety Responsibility Law were synonymous with the term "authorized" as applied to insurance companies which qualify under the Insurance Code, Title 22 of the Revised Statutes, either as domestic insurers or foreign insurers admitted to do business in the state. "Surplus line" insurance was regulated by the Insurance Code under the general heading of "Unauthorized Insurance" (R.S. § 22:1257 et seq.), and coverage could be written only if it was not obtainable from authorized insurers, and could be purchased only from licensed brokers. Therefore, according to the defendant, surplus line companies were "unauthorized companies" under the Insurance Code, and surplus line policies were not evidence of financial responsibility under the Motor Vehicle Safety Responsibility Law.

The trial court agreed with defendants and denied relief. The appellate court reversed, stating the issue as follows:

> There can be no doubt that the surplus line insurers are 'doing business' in this State. Neither can it be questioned that they are doing so under the authority of law. The question presented here is whether the word 'authorized', as used in the Safety Responsibility Law refers to those companies to which the State has issued certificates of authority, or includes all companies permitted by law to do business in the State.

*Id.* The appellate court concluded that

> "the better interpretation of the law is the one which harmonizes two section of the law rather than finds them repugnant, . . . . We find that surplus line companies are authorized to do business in Louisiana within the meaning of that phrase as contained in the Motor Vehicle Safety Responsibility Law."

*Id.* at 834.

In support of its motion, Vanguard offered affidavits of Fox McKeithen, Secretary of State for the State of Louisiana, and Larry Murray, Commissioner of the Office of Financial Institutions of the State of Louisiana. Mr. McKeithen attested that a foreign corporation not domiciled in the State is not required to obtain a certificate of authority from that office when it obtains a security interest in real property situated within the State as collateral for a loan initiated outside the State, when it sues or defends itself in a lawsuit, or when it obtains the property by deed in lieu of foreclosure or by *dation en paiement.* Mr. Murray testified that under those circumstances, a bank or other financial institution is authorized to transact business in the State of Louisiana and is not required to obtain any certificate, or other authority to transact business, from the Office of Financial Institutions in the State of Louisiana. *See* Vanguard's memorandum in support of Motion for Reconsideration, Exs. "C" and "D".

The Court concludes that the better interpretation of LSA R.S. § 6:1121 et seq., and the interpretation that a Louisiana state court would reach, is that a financial institution authorized to transact business in the state pursuant to LSA R.S. § 12:302 is also authorized to transact business in the state within the meaning of LSA R.S. § 6:1121 et seq. This, however, does not change the ultimate result, because the court concludes that the agreement at issue is not a credit agreement within the meaning of the statute.

■ The crux of the matter is whether the disputed agreement should be construed as a "settlement agreement" or a "credit agreement". Section 1121 defines a "credit agreement" as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation." LSA–R.S. § 6:1121(1) (West Supp.1994). Section 1123 prohibits causes of action arising from an alleged oral credit agreement.

A transaction of compromise is agreement between two or more parties to adjust their differences by mutual consent to prevent or put an end to a lawsuit. *Clark v. Ark–La–Tex Auction, Inc.,* 593 So.2d 870 (La.App. 2 Cir.1992), *writ denied,* 596 So.2d 210. Public policy considerations favor compromise and settlement of lawsuits. *Daigle v. Clemco Industries,* 593 So.2d 1282 (La. App. 1 Cir.1991), *aff'd,* 613 So.2d 619 (La. 1993). Louisiana law regards a compromise or a settlement of a lawsuit as a contract. La.C.C. Art. 3071; *TechniCAL, Inc. v. Allpax Products, Inc.* 786 F.Supp. 581, 585 (E.D.La.1992) (citing *Parich v. State Farm Mutual Ins. Co.,* 919 F.2d 906, 913 (5th Cir.1990), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991)), *aff'd,* 977 F.2d 578 (5th Cir.1992). In Louisiana, written contracts can be modified by oral contracts and the conduct of the parties, even if the contract contains a provision that it can be modified only in writing. *Pelican Electrical Contractors v. Neumeyer,* 419 So.2d 1, 5 (La.App. 4 Cir.1982) *writ denied,* 423 So.2d 1150 (La.1982).

By its terms, the agreement at issue does fall within the scope of the definition of "credit agreement" in § 1121(1) as Vanguard does agree to "forbear the repayment of money". However, it also constitutes a compromise entered into by consent of the parties to settle a lawsuit. The agreement was confected in settlement of both the Florida lawsuit and Vanguard's foreclosure action brought in Louisiana. Because the underlying purpose of the comprehensive agreement was to compromise and settle all issues included in two lawsuits between the parties, and not specifically to extend credit to Durham, the Court concludes that the agreement at issue is a settlement agreement, not a credit agreement. Vanguard has not met its heavy burden to justify dismissal pursuant to Rule 12(b)(6) or summary judgment. Accordingly,

**IT IS ORDERED** that Vanguard's motion for reconsideration by **GRANTED** to the extent that the Court's Minute Entry dated May 18, 1994, be and is hereby **VACATED,** and

**IT IS FURTHER ORDERED** that Vanguard's motion to dismiss or for summary judgment be and is hereby **DENIED.**