JACKSON v. U. S. FIDELITY & GUAR-
ANTY CO. et al.

No. 6159.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 1, 1940.

E. W. & P. N. Browne, of Shreveport, and G. M. Bodenheimer, Jr., of Springfield, for appellant.

Barksdale, Bullock, Clark & Van Hook, of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiff, a tenant of defendant, A. H. Van Hook, was injured by falling through the kitchen floor of the leased tenement. She sues her lessor and his insurer, the United States Fidelity & Guaranty Company, for damages resulting from injuries sustained.

The accident occurred on October 21, 1939. On November 7, 1939, Mr. W. Clyde Talton, claim adjuster of the insurer, visited plaintiff for the purpose of procuring, if possible, a settlement with her of any claim for damages, real or imaginary, growing out of the accident. To that time she had not reported the accident to·anyone nor had she indicated a purpose or desire to seek damages on its account. Plaintiff was then in bed, presumably from the effects of the injury caused from the fall. At that time, for the consideration of $7.50 she signed in lead pencil what purports to be a release and/or compromise of any right or claim to damages accruing to her on account of the accident. This instrument, on its face, if legally consummated, is adequate to foreclose the claim for damages herein asserted.

Concerning the release and/or compromise agreement referred to, plaintiff avers:

"Petitioner now shows that on or about the 28th day of October, 1939, a representative of the defendant, insurance company, and/or the defendant, A. H. Van Hook, obtained from her, her signature to what now purports to be a release of all claims and rights to recovery from the accident and injuries hereinbefore referred to.

"Petitioner now shows that at the time the instrument above referred to was signed, she was in bed in a highly nervous state, and was unable to read said instrument.

"That she signed said instrument without knowing or being told that the instrument was a release, upon the representation by the agent, that the defendant, A. H. Van Hook, was merely trying to help her out while she was in bed.

"Petitioner avers that she signed said instrument not knowing that same purported to be a release, and had she been informed of the true facts she would not have signed said instrument.

"Petitioner now shows that at the time said instrument was signed by her, she was paid the sum of Seven Dollars and Fifty

Cents ($7.50) which now appears as the consideration in purported release.

"Petitioner shows that she has tendered unto defendants and now offers to tender unto the defendants the Seven Dollars and Fifty Cents ($7.50) referred to above."

Defendant interposed pleas of estoppel and res judicata, based upon the written instrument aforesaid. Trial of these pleas was had in advance of answer to the merits. The pleas were sustained and the suit dismissed from which plaintiff appealed.

■ There is sharp dispute between plaintiff and her fifteen year old daughter on one side, and the adjuster on the other side, as to what was said or represented by the latter preceding the signing of this release. The release is on a regular printed form used for such settlements, but the blank spaces therein were not then filled. This was done on the duplicate originals by the agent after returning to his office. The $7.50 was not paid at that time.

It is not disputed by plaintiff nor her daughter that when this release was signed Mr. Talton then stated to them that the release would have to be sent to the insurer's office in New Orleans, and check for the consideration received therefrom before said amount could be paid to plaintiff; that he would return in a few days with the check.

On November 10, 1939, the check referred to was received by the agent from the New Orleans office, with the advice that a new release should be executed in ink. He immediately called on plaintiff at her home and explained to her the need for signing new papers. She readily acceded to his request and signed in duplicate another release identical in language and purport as the previous one. The check for $7.50 in her favor was then delivered to her. She endorsed it promptly and had it cashed. The amount thereof was tendered back to the insured's agent before this suit was filed.

The petition does not specifically charge that the release and/or compromise was executed by plaintiff because of error or fraud. The most that can be said on this score is that plaintiff signed it without having read or acquainted herself with its contents, upon the representations of Mr. Talton that the amount was being paid her by Mr. Van Hook out of the goodness of his heart; "merely trying to help her out while she was in bed."

It may be said, in passing, that Mr. Talton does not contend that he went into a detailed discussion of the facts of this transaction when the first release was signed. He did testify that he briefly explained to plaintiff that since her injuries were not sufficiently serious to require the services of a physician that compensation for the loss of time from work appeared adequate and would be paid. He is certain he referred to the fact that Mr. Van Hook was protected by insurance and that any amount paid plaintiff would come from his insurer.

Plaintiff is a member of the colored race. The record discloses that she is fairly well educated. Her handwriting is quite legible and clearly reflects that she is not unaccustomed to writing. Her testimony carries the distinct impression that intellectually she is far above the average of her race. Her daughter, Helen, was present when both of the releases were signed. She is in the ninth grade in high school. She testified that she heard the conversation had on each occasion and collected the check for her mother.

We are not favorably impressed with plaintiff's contention that she simply believed the money paid her came from Mr. Van Hook as a sort of benefaction out of a desire to help her along. She was at that time in arrears on rent account. His agent had visited her a few days prior to collect past-due rent, but only received a promise that it would very soon be forthcoming. In these circumstances, it would appear most unusual and unnatural for the landlord to be donating cash to the tenant.

Plaintiff and her daughter must have understood that this payment was intended to and did have some close connection with her injury. They had three days to think over the matter and consult friends or attorney concerning the same. It does not appear that they did so. When the agent returned with the check and new release, fully filled out, no questions were asked, no hesitancy about signing was exhibited.

The form of written release in question negatives any inference that in language, arrangement or construction it is designed or calculated to mislead. In large letters, preceding the printed portion of the instrument, appears the word "Release". Immediately before the line on which plaintiff signed is printed in large letters, "Caution! Read Before Signing". Both plaintiff and her daughter gave accurate defini-

tions of the word "release", in saying that by so doing "you gave up something."

In addition to what appears on and in the release to apprise the signer of its purport, the check delivered to plaintiff should have, and if carefully read, as was her duty, would have brought home to her the full meaning of what she had done and the purpose the acceptance of the check was intended to accomplish. In medium size type immediately below the words "Seven and 50/100 Dollars" is printed "In full satisfaction of the claim or account stated below". Reference to the claim (by insurer's number) and its date is made at bottom of the check.

In view of the foregoing resume of facts, nearly all of which are undisputed, the conviction arises that plaintiff must have been fully aware that in executing the release and accepting, endorsing and collecting this check, she was thereby dismembering herself of something of real or possible value. She knew Mr. Van Hook lived in Shreveport, locus of the leased premises, and must be held to know that had he wished to donate her $7.50, the simple act of handing her the cash was all that would have been necessary. There would have been no reference whatever of the matter to New Orleans.

Of course, if plaintiff had a cause of action against Mr. Van Hook for the injury sustained from the fall, a question not before us, the $7.50 paid her bears a very meager proportion to the amount she would have been entitled to recover, assuming her allegations to be substantially correct.

"Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected." Art. 3078 of Civil Code.

If a person wilfully chooses to compromise a right, deemed by him of considerable value, for an amount much less than such value, he alone is the judge of the propriety of so doing; and, regardless of the disparity, no action can be maintained to set aside the contract on the ground of lesion. It may be annulled when consummated through fraud or violence. Civil Code, Art. 3079. But, we have found in this case lack of fraud as a factor in the confection of the compromise agreement.

In the case of Beck v. Continental Casualty Company, 145 So. 810, 811, the facts of which are not dissimilar to the present one, this court reviewed to large extent pertinent jurisprudence. In that case the plaintiff was paid $25 to compromise his claim for damages on account of loss of an eye. In rejecting the attack on the compromise, and the inadequency of the consideration, we said:

"The law in its wisdom, and out of a solicitude to end or avert threatened litigation, encourages the settlement of disputes by compromise, and does not sanction the solemn acts of contending parties settling their disagreements being lightly brushed aside, unless there be present evidence of bad faith, error, fraud, etc. If such were not the law, there would be little incentive to any one to part with anything of value in the desire to escape the harassments of litigation. A compromise agreement, when freely entered into, is intended to have the binding effect of the thing adjudged. The law has ordained that such transactions have the dignity and force of a definitive judgment, in so far as definitely and irrevocably fixing the rights and liabilities of the parties thereto, as relates to the subject-matter dealt with. It is simply the act of the parties determining their own liabilities and obligations, instead of the court."

The quoted excerpt finds peculiar application to the facts and law of the case before us.

The judgment appealed from is correct. It is affirmed with costs.