593 So.2d 1282 (1991)
Barbara DAIGLE, et al.,
v.
CLEMCO INDUSTRIES, et al.
Nos. 90 CW 2324, 91 CW 0099.
Court of Appeal of Louisiana, First Circuit.
December 2, 1991.
Rehearing Denied January 22, 1992.
Writ Granted May 1, 1992.
*1283 Alfred F. McCaleb, III, Baton Rouge, for Daigle, et al.
Craig R. Nelson, New Orleans, for Clemco Ind.
Edward O. Lobman, Metairie, for Industrial Indem. Co.
Donald A. Hoffman, New Orleans, for Mine Safety Appliances Co., Travelers & INA.
Leonard A. Young, New Orleans, for Gulf Ins. Co.
Robert T. Myers, New Orleans, John I. Moore, Baton Rouge, for Liberty Mut. Ins.
John E. Galloway, New Orleans, for Mississippi Valley Silica Co. Inc.
Gary Zwain, Metairie, for Pulmosan Safety Equip. Corp.
Henry E. Yoes, III, Lake Charles, for Clemtex, Ltd.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
Plaintiffs, Barbara Daigle and her children, Donald, Ronald, Daniel, Jr., Lynn, Darryl, and John Wayne, filed a wrongful death suit on May 19, 1989, against numerous defendants, seeking recovery in damages for the death of Daniel Daigle, the plaintiffs' husband and father.[1] Daigle died on May 19, 1988, from pulmonary silicosis which allegedly was caused by his exposure to crystalline-free silica during his occupation as a sandblaster/painter; the defendants named in the plaintiffs' action were the executive officers of Daigle's employers as well as the manufacturers of protective and safety equipment used by the decedent in sandblasting. The following defendants are involved in these writs: Clemtex, Atlantic Mutual Insurance Company, Travelers Insurance Company, Mine Safety Appliances, Insurance Company of North America (INA), Gulf Insurance Company, Liberty Mutual Insurance Company, and Mississippi Valley Silica Company, Inc.[2] These defendants sought writs from the action of the trial judge overruling their objection raising the peremptory exception of res judicata.
The basis of the defendants' exception was a settlement that Daigle and his wife *1284 Barbara entered into with certain parties on October 11, 1979 and a settlement that some of his children entered into in September, 1979. Daigle had filed suit in 1976 seeking personal injury damages for his pulmonary silicosis. Liberty Mutual, a defendant in the present action, was named as a defendant in the 1976 action and filed a third party demand against Clemtex and Mine Safety Appliances. Daigle dismissed the suit with prejudice after executing a release containing the following language:
That he [Daniel Daigle] has this day received the sum of Two Hundred Thousand... Dollars in full and final payment, settlement, satisfaction and compromise of all claims, demands, damages and causes of action which he has or may have against all persons, firms and corporations whatsoever on account of, with respect to, or in any way connected with or growing out of this release including particularly but not exclusively those claims and alleged causes of action asserted by appearer in the suits entitled `Daniel Daigle vs. Liberty Mutual Insurance Company....
The release specifically named all the defendants involved in these writs, with the exception of Atlantic. Although she was not a party to the 1976 action, Barbara also executed a release involving the same defendants. The third paragraph of the release states, in part:
[S]he does hereby release all persons, firms and corporations whatsoever from all claims which she may have now or at any time in the future for the alleged wrongful death of Daniel Daigle as a result of or in any way connected with the alleged injuries described in the aforesaid suit, including any claims for loss of support or earnings, loss of love and affection, pain and suffering or any other claim she might or could have.
Appearer, Barbara Daigle, additionally agrees to hold harmless and indemnify the parties in whose favor this release runs as to any claims that may be made or brought by any of the children born of her marriage to Daniel Daigle including particularly but not exclusively Darrell Daigle and Wayne Daigle as well as any claims for loss of financial support, loss of love and affection of their father and for any claim they or any of them might have for conscious pain and suffering on the part of their said father.
Some of the children of DaigleDonald, Ronald, Daniel, Jr., and Lynnalso executed a release which states in pertinent part:
That they are the only surviving major children of Daniel Daigle and that there are only two other children of Daniel Daigle namely Darrell Daigle who is now sixteen years of age and Wayne Daigle who is now thirteen years of age.
That in order to induce certain defendants and third party defendants in the suit entitled `Daniel Daigle vs. Liberty... to make a compromise settlement with their father ... appearers do hereby, in consideration of the aforesaid settlement, release all persons, firms and corporations whatsoever from all claims which appearers may have at any time in the future for the alleged wrongful death of Daniel Daigle as a result of or in any way connected with the alleged injuries described in the aforesaid suit including any claims for loss of support or earnings, loss of love and affection, pain and suffering or any other claim they might or could have....
Based on these releases, the defendants raised the exception of res judicata in the trial court. The trial judge denied the exception without giving reasons for her judgment. The defendants sought writs from the action of the trial judge. They contend that she erred in failing to find that the releases were valid and in failing to give them effect. This court granted writs of certiorari to review the judgment of the trial court.
The issue presented to us is whether a pre-death release of a wrongful death claim by the beneficiaries listed under LSA-C.C. *1285 art. 2315 is valid such that it should be given res judicata effect.
The general rule governing compromises to litigation was set forth in Meinerz v. Treybig, 245 So.2d 557, 559 (La.App. 3d Cir.), writ refused, 258 La. 580, 247 So.2d 395 (1971): "[C]ourts will not declare a contract void as against public policy in the absence of an express legislative or constitutional prohibition or a clear showing that the purpose of the contract contravenes good morals or public interest." (Citations omitted).
We can find no legislative or constitutional prohibition of a pre-death release. Plaintiffs argue that the Civil Code articles prohibiting contracting for the succession of a living person cited in the case of Schiffman v. Service Truck Lines, Inc., 308 So.2d 824 (La.App. 4th Cir.1974) as well as that case clearly shows that a pre-death release contravenes good morals or is contra bonos mores.
In Schiffman, the Fourth Circuit was presented with the same issue as this court is in this case. A truck driver allegedly negligently injured Schiffman, rendering him comatose. Schiffman's wife, acting as curatrix for her then interdicted husband, executed a release and receipt in which she discharged all claims to recover damages for her husband's pain and suffering; she also remitted all claims for her own individual losses which might result from his death. In return for the release, the defendants paid her $75,000.00 on behalf of her husband. After her husband died, Mrs. Schiffman brought a wrongful death action to recover damages for herself and her children.
The defendant raised the exception of res judicata based on the release. The trial court sustained the exception as to Mrs. Schiffman; Mrs. Schiffman appealed, and the Fourth Circuit reversed the trial court, with one judge dissenting. The court held that the release was invalid as against the public policy prohibiting dealing in or renouncing rights which require the death of a living person in order to come into existence. In reaching this conclusion the court relied on various succession articles of the Civil CodeLSA-C.C. arts. 984, 1887, and 2454.[3] Although these succession articles do not mention wrongful death claims, the court found that this did not suggest an intent to exclude wrongful death claims because an action for wrongful death did not exist when the succession articles were enacted. The court then relied on various civilian authorities for support of the prohibition against selling or dealing in rights to a future succession because it is contra bonos mores. The court concluded "Our answer is far from free of doubt. We, however, conclude that contracting in future rights whose coming into existence requires a living person to die is no more acceptable in wrongful death cases than in succession cases in Louisiana." Schiffman, 308 So.2d at 827 (footnote omitted).
In the dissenting opinion, Judge Stoulig reasoned that the majority construed the public policy too broadly. He reviewed the codal articles cited by the majority, and found that the policy embodied was not dictated by moral consideration but that the primary motivation was to "zealously protect our laws of dissent [sic] and distribution, particularly as they relate to the legitime of forced heirs." Schiffman, 308 *1286 So.2d at 828. He also cited the codal article which permitted a future succession right to be the object of a marriage contract. LSA-C.C. art. 1888 (presently LSA-C.C. art. 1976). He then disagreed with the majority's reasoning that the release of a right by a beneficiary in a prospective wrongful death action was analogous to the acceptance, rejection or sale of an inhibited right in a future succession. According to Judge Stoulig, "Not every instrument whose efficacy depends on the death of a living person is per se against public policy or good morals, otherwise a valid disposition mortis causa could never be effected." Schiffman, 308 So.2d at 829. Finally, Judge Stoulig went on to discuss the codal authority in support of compromise; he reasoned that under the majority ruling there would be little inclination to settle a claim whenever there was a probability that a wrongful death action would eventually arise.
We disagree with the majority reasoning in Schiffman and agree with the reasoning in the dissent.[4] The Schiffman case has been criticized in law review articles. Juge, Note, TortWrongful Death Release of Claim before Death of Victim, 50 Tul.L.Rev. 720 (1976); Johnson, Work of Appellate Courts1974-1975, Obligations, 36 La.L.Rev. 375, 387 (1976). Both authors in their law review articles point out that the court's analogy between wrongful death claims and succession law was insupportable. They both also reason that the public policy considerations in succession law do not apply to tort law. The succession laws prohibiting accepting, renouncing or selling the successions of living persons were to protect the living person whose succession was the subject of the sale and to protect the vendee since the rights of the potential heir were speculative and might never come into existence. As Johnson stated in his law review article:
The same considerations do not appear to be true of the wrongful death action. First, there is no `vendee' in the normal sense of that word, and there is no reason to protect the compromising tortfeasor in the future. Second, the contract in question is one of settlement and release. Neither in its confection nor subsequent to it is the death of the victim material. Neither party would have any reason to seek the death of the victim, which is the `moral' problem with the sale of the succession of a living person. Certainly the defendants would gain nothing by his death; theoretically they have already paid the damages to be suffered by that event. And certainly the wife gains nothing by his death unless it be the right to ignore the terms of a settlement such as this one and bring suit. If that is the case, the court's decision to void the settlement ironically might foster those `immoral' thoughts that it wants to avoid.
36 La.L.Rev. at 390. Johnson then pointed out that term life insurance is a contract based on future rights whose coming into existence requires a living person to die.
The civil code specifically provides that future things may be the object of a contract; the only exception to this rule is that the succession of a living person may not be the object of a contract except in an antenuptial agreement. LSA-C.C. art. 1976 (formerly LSA-C.C. arts. 1887 and 1888). Strong public policy considerations favor compromise and settlement of lawsuits. See Richard v. Southern Farm Bureau Casualty Insurance Co., 254 La. 429, 223 So.2d 858 (1969); Durbin v. Cockerham, 442 So.2d 634 (La. App. 1st Cir.1983). The law generally does not authorize the invalidation of settlements where there is no evidence of fraud, bad faith, or error. Jackson v. U.S. Fidelity & Guaranty Co., 199 So. 419 (La.App. 2d Cir.1940). In this case, there is no evidence of fraud or bad faith or error. As the author of the Tulane Law Review article stated, "[I]n Schiffman, the court's decision *1287 allowed the plaintiff to enjoy the benefits of a settlement without the disadvantage of being bound by it. She signed a release of her possible claim and received a fairly substantial sum, having no idea as to how long her husband might live, and yet retained the right to sue for wrongful death if and when his death resulted." 50 Tul.L.Rev. at 727 (footnote omitted). We conclude that in the absence of fraud, error or coercion, in light of the clear and strong policy considerations favoring compromise, that the pre-death releases in this case should not be invalidated on the basis of public policy arguments doubtfully analogized from an unrelated area of law.[5]
In the cases of Johnson v. Sundbery, 150 So. 299 (La.App. 1st Cir.1933) and Gilmore v. Southern Railway Co., 229 F.Supp. 198 (E.D.La.1964), the courts held that a compromise where the victim settled all his claims against his tortfeasor could not affect the wrongful death action of the victim's beneficiaries under LSA-C.C. art. 2315; the courts reasoned that the beneficiaries' rights arose only on the victim's death and thus were unable to be compromised by the victim. In Guillory v. Petroleum Helicopters, Inc., 436 So.2d 1280 (La. App. 1st Cir.), writ denied, 441 So.2d 1220 (La.1983), the victim signed a release and indemnity agreement in which he bound his heirs and legatees to hold harmless the defendant in an action for personal injury should an action subsequently be brought for the injured party's wrongful death. When the plaintiffs subsequently brought a wrongful death action, the court held that the indemnity agreement could not be enforced against them because the wrongful death action is a separate cause of action that arises upon the injured party's death and the injured party while alive could not release the survivor's right to bring such an action. We find these cases are distinguishable from this case because in our case the parties to whom the wrongful death action belonged released their rights to their action. In Johnson, Gilmore and Guillory, the victims tried to release rights to wrongful death actions which were not theirs to release. Additionally, in this case, although Barbara Daigle and the children were releasing rights to an action which had not accrued since Daigle had not died, as earlier discussed, the Civil Code provides that parties may contract as to future things.
In support of their argument that the pre-death release of a wrongful death claim is against public policy, the plaintiffs cite a law enacted by the legislature in 1982 dealing with this issue; the law has since lapsed by its own terms. LSA-R.S. 9:3921 read as follows:
Those persons accorded the right, under Article 2315 of the Civil Code, to recover the damages which they may sustain through the wrongful death of an injured person may, with court approval, enter into a transaction or compromise agreement with respect thereto, prior to the accrual of such right upon the death of such injured person.
Such transaction or compromise agreement shall be valid and enforceable according to its terms whether executed before or after the death of the injured person.
Section 2 of Acts 1982, No. 803, provided that this act would lapse and become null and void on and after June 30, 1983. The plaintiffs argue that the enactment of the law allowing pre-death releases of wrongful death claims shows that they were not allowed otherwise. The defendants contend that the enactment of the law shows that pre-death releases are not against public policy. We agree with the defendants' contention.
However, while we agree with the defendants' contention that the releases in this *1288 case were not against public policy we note our grave concern with respect to such pre-death releases. While the parties might consider it advantageous under some circumstances to settle wrongful death cases in advance, the inherently emotional nature of such settlements has the potential to cause strife and discord within the family of the dying individual. Additionally, family members in some cases may feel extreme emotional pressure to release their potential causes of action for less than adequate consideration in order to facilitate the settlement of the dying individual's own claim for damages. The ability of those involved to intelligently and rationally execute a release of their future rights under such circumstances is far from ideal.
We believe the legislature was cognizant of these possibilities when it enacted LSA-R.S. 9:3921 requiring court approval of anticipatory releases of wrongful death claims. Requiring such court approval would provide a safeguard to all parties by ensuring that the release is entered into with a full understanding of the rights released and the resulting consequences.
Finally, the plaintiffs argue that no consideration supports the releases as to Barbara Daigle and the Daigle children since they did not receive any of the $200,000.00 given to their father. Although the plaintiffs did not receive any direct remuneration, they did receive the indirect benefits flowing from the compromise settlement; these benefits do constitute serious consideration. Furthermore, under LSA-C.C. art. 229, "[c]hildren are bound to maintain their father and mother ..., who are in need.... This basic obligation is limited to life's basic necessities of food, clothing, shelter and health care...."
The plaintiffs argue that the settlement agreements should not be valid as to three of the Daigle children. The plaintiffs argue that when the alleged major children signed the settlement agreement in September, 1979, the youngest of themLynnwas not yet a major since his birthday fell a few weeks after the document was signed. No evidence in the record supports this contention and the document states that Lynn was a major. As to Darryl and John Wayne, who were minors when their mother signed the October, 1979, release relinquishing their rights, the plaintiffs argue that Barbara's signing of the settlement agreement on their behalf resulted in a compromise or release of their claims without court approval as required by LSA-C.C.P. art. 4265. According to LSA-C.C.P. art. 4271, "[w]ith approval of the court as provided in Article 4271, a tutor may compromise an action or right of action by or against the minor, or extend, renew, or in any manner modify the terms of an obligation owed by or to the minor."[6] A minor's rights may not be relinquished except pursuant to specific authorization from a court of competent jurisdiction, and any compromise entered into without court approval is of no legal effect. Johnson v. Ford Motor Co., 707 F.2d 189 (5th Cir.1983). Thus, the plaintiffs' contention has merit as to Darryl and John Wayne but not as to Lynn.
For these reasons, the judgment of the trial court overruling the exception of res judicata as to Barbara, Donald, Ronald, Daniel Jr., and Lynn is reversed as to the following defendants: Clemtex, Travelers Insurance Company, Mine Safety Appliances, Insurance Company of North America, Gulf Insurance Company, Liberty Mutual Insurance Company, and Mississippi Valley Silica Company, Inc. The judgment of the trial court overruling the exception of res judicata as to Darryl and John Wayne as to the previously named defendants, *1289 as well as Atlantic, is affirmed. The judgment of the trial court overruling Atlantic's exception of res judicata as to all plaintiffs is affirmed. Costs of this appeal to be divided equally between the plaintiffs and the defendants. This matter is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Barbara Daigle originally filed suit as the administratrix of the succession of Daniel Daigle. Several defendants filed an exception of no right of action, contending that because there were representatives of the classes listed under LSA-C.C. art. 2315, the succession representative had no right of action. The exception was sustained. Barbara Daigle remained in the suit in her individual capacity.
[2] Although Industrial Indemnity Company, the insurer of Mississippi Valley Silica, filed an exception of res judicata on the same grounds as the other defendants, the trial judge's judgment denying the exception fails to mention Industrial Indemnity Company. Since the trial court did not act on Industrial's exception, we have nothing to review on this appeal as to Industrial.

Mississippi Valley Silica was not named as a defendant in the plaintiffs' original petition, but apparently was named as a defendant in the plaintiffs' first amending petition. The first amending petition is not a part of the record.
[3] LSA-C.C. art. 984 reads as follows: "The acceptance or rejection made by the heir, before the succession is opened or left, is absolutely null and can produce no effect; but this does not prevent the heir who has thus accepted, from accepting or rejecting validly the succession when his right is complete."

At that time, LSA-C.C. art. 1887 read as follows: "Future things may be the object of an obligation. One can not, however, renounce the succession of an estate not yet devolved, nor can any stipulation be made with regard to such a succession, even with the consent of him whose succession is in question." LSA-C.C. art. 1887 became LSA-C.C. art. 1976 when the obligations articles of the Civil Code were revised in 1984 by Acts 1984, No. 331 § 1. According to the comments to LSA-C.C. art. 1976, the substance of LSA-C.C. art. 1887 can now be found in LSA-C.C. art. 1976, and there was no change in the law.
LSA-C.C. art. 2454 reads as follows: "The succession of a living person can not be sold."
[4] We are not bound to follow the decisions of another circuit. Nungesser v. Nungesser, 558 So.2d 695 (La.App. 1st Cir.), writ denied, 560 So.2d 30 (La.1990).
[5] We note that in our search of the jurisprudence of other states, three states have been faced with whether a pre-death release of a wrongful death claim is valid, and all three have found that it is. Pecorino v. Raymark Industries, Inc., 763 S.W.2d 561 (Tex.Ct.App.1988); F.W. Woolworth Co. v. Todd, 204 Okla. 532, 231 P.2d 681 (1951); Petersen v. Kemper, 70 S.D. 427, 18 N.W.2d 294 (1945).
[6] Since both Daniel and Barbara Daigle were alive when the compromise was entered into, and they were not legally separated or divorced, Daniel would have been the proper party to enter into the compromise agreement on behalf of the minor children since he would be the administrator of their estate. LSA-C.C.P. art. 683. However, even if Daniel Daigle had signed the compromise agreement on behalf of his minor children, he would have still needed court approval because he would occupy the place and have the powers of a tutor. LSA-C.C.P. art. 4501. See also Johnson v. Ford Motor Co., 707 F.2d 189 (5th Cir.1983).