613 So.2d 619 (1993)
Barbara DAIGLE, et al.
v.
CLEMCO INDUSTRIES, et al.
No. 92-CC-0604.
Supreme Court of Louisiana.
February 11, 1993.
*620 Alfred F. McCaleb, III, Baton Rouge, for applicant.
Craig R. Nelson, Hulse, Nelson & Wanek, New Orleans, Henry E. Yoes, III, Pitre, Yoes, Kay & Halley, Lake Charles, Donald A. Hoffman, Paul J. Politz, Ann Marie LeBlanc, Hoffman, Sutterfield, Ensenat & Bankston, Leonard A. Young, J. Edward Thompson, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, John I. Moore, John Michael Parker, Taylor, Porter, Brooks & Phillips, Baton Rouge, John E. Galloway, Jack E. Chappuis, Jr., Galloway, Johnson, Tompkins & Burr, New Orleans, for respondent.
DENNIS, Justice.[*]
We are called upon to decide whether the spouse and children of a tortiously injured person may, during his lifetime, validly compromise their potential wrongful death claims against the alleged tortfeasor(s). See La.Civ.C. art. 2315.2. This case arises as a sequel to a personal injury suit for damages sustained by an injured worker resulting from long-term industrial exposure to crystalline free silica. As a condition of their agreement to a cash settlement with the injured worker, the defendants required the worker's wife and children to relinquish their prospective rights to damages arising out of the alleged occupational injury, including damages available after the death of the worker under Louisiana's wrongful death statute, La. Civ.C. art. 2315.2. The potential statutory beneficiaries received no direct pecuniary compensation for their releases but instead signed the agreements, as evidenced by the clear language of the documents, to induce the defendants to settle with the injured worker. After the death of the worker, the wife and children instituted the instant action for damages they sustained as a result of the alleged wrongful death of their spouse and father. The defendants raised the peremptory exception of res judicata based on the releases. After considering the matter, the trial judge denied the exceptions. Defendants sought review of that ruling; the appellate court affirmed in part, invalidating releases made on behalf of the victim's minor children without court approval but otherwise concluding that the waiver of a prospective wrongful death claim by enumerated statutory beneficiaries is valid and should be given res judicata effect. 593 So.2d 1282.
We affirm. There is no express constitutional or legislative prohibition against the settlement of a potential wrongful death claim after injury has occurred but before the tort victim's demise. In fact, the Civil Code provides, as a general rule, that future things may be the object of a contract. La.Civ.C. art. 1976. The only future thing excepted from this rule is the succession of a living person. La.Civ.C. arts. 1976, 2454. Furthermore, the compromise of a potential wrongful death claim against a third person based on the past injury of a spouse or parent does not derogate from laws enacted for the protection of the public interest. See La. Civ.C. art. 7. By the same token, the compromise does not produce a result against public policy or public order. La.Civ.C. arts. 1968, 2030. Accordingly, we conclude that the compromise of a prospective wrongful death claim has res judicata effect *621 if there is no error, fraud, duress or undue influence which vitiates the consent of the potential wrongful death beneficiary. Because there is no evidence of a vice of consent under the facts of the instant case, the decisions below are affirmed.

FACT & PROCEDURAL HISTORY
Daniel Daigle, Sr. worked as a sandblaster/painter for six years for various employers. During that time he was exposed to industrial abrasive, including crystalline free silica, which eventually caused his death. During his lifetime, Daigle filed suit for personal injury arising out of this industrial exposure and resulting contraction of pulmonary silicosis. The executive officers of Daigle's employers were named as defendants in the action with the manufacturers of the protective and safety equipment used by him in sandblasting. On May 19, 1988, Mr. Daigle died as a direct result of the silicosis, leaving as survivors a wife (Barbara Daigle) and six children (Donald J. Daigle, Ronald P. Daigle, Sr., Daniel Daigle, Jr., Lynn P. Daigle, Darryl J. Daigle, Sr. and John W. Daigle).
On September 18, 1979, plaintiffs Donald J. Daigle, Donald P. Daigle, Sr., Daniel Daigle, Jr. and Lynn P. Daigle executed a release in favor of the defendants "in order to induce certain defendants and third party defendants in the suit ... to make a compromise settlement with their father, Daniel Daigle in the amount of two hundred thousand ($200,000.00) dollars." The release recited that they were the only surviving major children of Mr. Daigle and provided, in part:
[A]ppearers do hereby ... release all persons, firms, corporations whatsoever from all claims which appearers may have at any time in the future for the alleged wrongful death of Daniel Daigle as a result of or in any way connected with the alleged injuries described in the aforesaid suit [entitled `Daniel Daigle vs. Liberty Mutual Insurance Company'] including any claims for loss of support or earnings, loss of love and affection, pain and suffering, or any other claim they might or could have ...
On October 11, 1979, Mr. Daigle entered into a full compromise and release of the defendants for two hundred thousand dollars ($200,000.00) and later dismissed his action against the defendants with prejudice. Although she was not a party to the personal injury action, Mrs. Daigle also granted to the defendants a full and complete release of all of her rights, past and future, and those of her minor children at the time, Darryl and Wayne Daigle "... in consideration of the aforementioned payment to Daniel Daigle, Sr." This release similarly provided, in part:
[S]he does hereby release all persons, firms and corporations whatsoever from all claims which she may have now or at any time in the future for the alleged wrongful death of Daniel Daigle as a result of or in any connection to the alleged injuries described in the aforesaid suit, including any claims for loss of support or earnings, loss of love and affection, pain and suffering, or any other claim she might or could have.
Appearer, Barbara Daigle, additionally agrees to hold harmless and indemnify the parties in whose favor this release may be made or brought by any of the children born of her marriage to Daniel Daigle ...
Mr. Daigle was alive but suffering from pulmonary silicosis and its attendant side effects at the time the purported releases and hold harmless agreements were signed. Extensive discovery had been conducted and a medical diagnosis of pulmonary silicosis was made. Although plaintiffs signed the releases with the full benefit of counsel, Mr. Daigle alone received monetary consideration. His wife and children agreed to waive their respect future rights to recovery for damages they sustained or would sustain as a result of Mr. Daigle's occupational injury and eventual death arising therefrom to induce the defendants to settle his personal injury action without the uncertainty of trial on the merits.
Following the death of Mr. Daigle, Barbara Daigle and her children brought suit for damages they sustained as the result of *622 his alleged wrongful death. Defendants raised the peremptory exception of res judicata based on the theory that the releases have, as between the parties, a force equal to the authority of things adjudged. La. Civ.C. art. 3078. Plaintiffs argued that the releases were nevertheless unenforceable because they violate a rule of public interest or order and reach a result against public policy. La.Civ.C. arts. 1968, 2030. The trial court denied the exceptions without giving reasons for judgment. The appellate court affirmed in part, finding that the pre-death releases signed by the wife and major children with benefit of advice and assistance of counsel to be valid and enforceable, but indicated that the settlements signed by the mother on behalf of her minor children were without judicial approval and were, therefore, unenforceable. Lynn Daigle's settlement was also approved despite his claim of lack of contractual capacity at the time the settlement agreement was confected. The Court of Appeal found no record evidence of his minority at the time the agreements were confected. The appellate court also found it significant that the document on its face recited Lynn Daigle's majority.

DISCUSSION
Several general principles concerning the object and matter of contracts set forth by Civil Code articles 1971-1977 are applicable in this case. Parties are free to contract for any object that is lawful, possible, and determined or determinable. La.Civ.C. art. 1971. A contractual object is possible or impossible according to its own nature and not according to the parties' ability to perform. La.Civ.C. art. 1972. Future things may be the object of a contract, except that the succession of a living person may not be the object of a contract other than an antenuptial agreement. Id. arts. 1976, 2454.
None of these principles prohibits the object of the settlement contract in the present case. The future thing that was the subject of the settlement was the prospective wrongful death right of action that the tort victim's spouse and children would acquire in the event that Daniel Daigle, Sr. died as the result of the particular tortious conduct described in the settlement. The succession of Mr. Daigle was not an object of the settlement contract; nor was the succession of any other living person.
The special rules governing the contract of transaction or compromise, La. Civ.C. arts. 3071-3083, do not modify or depart from the general principles concerning the object of contracts. La.Civ.C. arts. 1915, 1916. Several complement the general contracts principles and imply that such compromises are permissible.
A transaction or compromise is an agreement between two or more persons, who, for the purpose of preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. La.Civ.C. art. 3071. Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them. La. Civ.C. art. 3073. The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises. Id. When the parties have compromised generally on all differences which they might have had with one another, the titles which they then know nothing of and which are afterwards discovered are not a cause of rescinding the transaction, unless they have been kept concealed on purpose by the deed of one of the parties. La. Civ.C. art. 3083.
The foregoing Civil Code articles on transaction and compromise indicate that persons, by such a contract, may settle any difference they may have in the present or in the future that is the subject of a lawsuit or that could result in litigation. See 1 S. Litvinoff, Obligations, Louisiana Civil Law Treatise, §§ 374, 392 (1962) and *623 cases cited therein. That learned commentator further notes that "As a matter of interpretation, the jurisprudence has asserted that the existence of litigation should be recognized from the moment a controversy arises between the parties. Moreover, the mere belief of the parties that litigation will arise suffices as the basis for a transaction and compromise." Id. at 637. This interpretation is confirmed by reading these articles in reference to another article on the same subject. See La. Civ. C. art. 13. Civil Code article 2004 provides that any contractual clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other; or that, in advance, excludes or limits the liability of one party for causing physical injury to the other party. The clear implication of these provisions, when considered in pari materia, is that a compromise or contractual clause is not null because it excludes or limits liability in advance except when a party to the contract relinquishes future rights of action arising from his or her physical injury or from the intentional or gross fault of another party. See Ramirez v. Fair Grounds Corp., 575 So.2d 811 (La.1991).
The plaintiffs are clearly mistaken in arguing that the compromise or settlement contract they executed is null because it was prohibited by law as a contract relative to the succession of a living person or as a prohibited contract in advance to limit the liability of one party to another for injury. As we have already indicated, the settlement contract did not have the prohibited object of having any heir relinquish or contract with respect to a right in the succession of a living person. The future right of action which the plaintiffs could have acquired, had they not relinquished it in the compromise, would have been afforded them by the wrongful death statutes, not the succession laws. Civil Code article 2315.2 provides that if a person dies due to the fault of another, suit may be brought by the surviving spouse and children of the deceased, among others, to recover damages which they have sustained as a result of the death. This right of action is created by law directly for the spouse, children, and other enumerated statutory beneficiaries of the deceased. It does not constitute an asset of the deceased's estate or property transferred by the laws of succession but instead vests in the beneficiary from the moment of death of the tort victim. Guidry v. Theriot, 377 So.2d 319 (La.1979).
Further, as we previously observed, Civil Code article 2004 only prevents a tort victim from relinquishing by contract in advance his right to recover for damage caused by the fault of another in two instances: first, when the contract or clause waives a victim's right to recover because of damage caused by the intentional or gross fault of the other party; and, second, when the contract or clause waives a victim's right to recover because of his or her physical injury. The present case fits neither category because the surviving spouse and children did not sustain physical injury and the defendants were not alleged to have been intentionally or grossly at fault.
Plaintiffs rely on Schiffman v. Service Truck Lines, Inc., 308 So.2d 824 (La.App. 4th Cir.1975) in which the court of appeal held that a wife's compromise, during her tortiously injured husband's life, of the wrongful death action she could acquire upon his death, was invalid as contrary to public order because that contract was analogous to and no more acceptable than the sale of a living person's succession. 308 So.2d at 827. After carefully considering the applicable Civil Code principles, including subsequent changes in the law, we conclude that the Schiffman decision, which the court of appeal itself acknowledged was "far from free of doubt", id., is not a persuasive example of the interpretation and application of the Code that should be followed in the present case.
The Schiffman majority opinion underestimated the importance and strength of the Civil Code principles establishing freedom to contract with respect to future objects and liberty to compromise and avoid litigation regarding all types of controversy, including contingent or uncertain future differences. See Richard v. Southern Farm *624 Bureau Casualty Insurance Co., 254 La. 429, 223 So.2d 858 (1969); Buyers and Traders Service, Inc. v. Car Maintenance Specialists of Baton Rouge, LA, Inc., 290 So.2d 753 (La.App. 1st Cir.1974); Meinerz v. Treybig, 245 So.2d 557 (La.App. 3d Cir.), writ denied, 258 La. 580, 247 So.2d 395 (1971). After establishing a competent person's broad freedom to contract or compromise for any object, the legislature created one narrow exception to this franchise which does not apply to the facts of the present case or any ordinary advance compromise of a wrongful death action.
The courts of this state are not authorized to review otherwise valid contracts to determine whether they conform to judicial notions of "morals, moral conduct and public order." Schiffman, 308 So.2d at 827. Civil Code article 7 provides: "Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity." Civil Code article 1968 provides: "The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy." Civil Code article 2030 provides, in pertinent part: "A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral." None of these provisions grants judges the prerogative to disregard public policy decisions underlying legislation or to reweigh balances of interests and policy considerations already struck by the legislature.
Considering that the legislature chose not to create an exception to the broad freedoms of contract and compromise with respect to actions for future wrongful deaths, as it did expressly in the case of sales of future successions, along with the great difference in the need for protection in each instance, we conclude that the type of compromise at issue here does not derogate from laws enacted for the protection of the public interest, violate a rule of public order, or produce a result prohibited by law or public policy. As a knowledgeable commentator observed, in the case of the advance wrongful death action settlement,
[f]irst, there is no "vendee" in the normal sense of that word, and there is no reason to protect the compromising tortfeasor in the future. Second, the contract in question is one of settlement and release. Neither in its confection nor subsequent to it is the death of the victim material. Neither party would have any reason to seek the death of the victim, which is the "moral" problem with the sale of the succession of a living person.
A. Johnson, Obligations, Work of the Appellate Courts, 36 La.L.Rev. 375, 390 (1976). See also Judge, Note, Tort Wrongful deathRelease of Claim before Death of Victim, 50 Tul.L.Rev. 720 (1976).
Legislative changes since the Schiffman case have further weakened its underpinnings. Civil Code article 2315.5, added in 1987, bars a person who has been convicted or judicially determined to have participated in the killing or attempted killing of his or her spouse, parent, or child from recovery in a survival or wrongful death action. In the unlikely event that a pre-death settlement of a wrongful death action would give a beneficiary the incentive to participate in homicide, this statute provides a counterbalance. Consequently, the concerns raised by the plaintiff and reflected in the successions rules against the sale of the succession of a living person have no significant bearing on the compromise of wrongful death actions. Furthermore, La. R.S. 9:3921 (1982) expressly authorized compromise of wrongful death actions "with court approval ... prior to the accrual of such a right upon the death of such injured person." The legislature allowed the statute to expire by its own terms in 1983 but has still not expressly prohibited such compromises. No strong argument either way can be based on this legislative history. However, it is likely that the legislature would have enacted permanent remedial legislation after its scrutiny of the problem if it had determined that such compromises were contrary to public interest, order, or policy.
*625 All other reported court decisions that we have examined have reached similar conclusions and results. Manguno v. Turner-Newell Limited, et al., 1991 WL 148129, 1991 U.S. Dist. LEXIS 10717 (E.D.La., July 29, 1991); Petersen v. Kemper, 70 S.D. 427, 18 N.W.2d 294 (1945); F. W. Woolworth Co. v. Todd, 204 Okl. 532, 231 P.2d 681 (1981).
Turning now to the question of the validity of Lynn Daigle's release, we find no evidence in the record that warrants overturning the lower court's ruling. The release recites that Lynn Daigle was of full age of majority at the time the agreement was confected and thus was vested with full contractual capacity. Even were we to accept his contention that he was in fact a minor and without legal capacity to waive his prospective right to recover wrongful death benefits, we would conclude that his right to assert the nullity of the release signed in his behalf has prescribed by the passage of five years.
Civil Code article 1919 declares that a contract made by a person without legal capacity is relatively null and may be rescinded at that person's request. Majority and contractual capacity is attained upon reaching eighteen years of age. La.Civ.C. arts. 28, 29. Article 2031 defines a contract as relatively null when it violates a rule intended for the protection of private parties, and specifically indicates that the lack of contractual capacity is grounds for nullity. However, Article 2032 limits the party's right to assert the nullity to a transaction by requiring the action to be brought within five years from the time the ground for nullity ceased or was discovered. Lynn Daigle's claim that he was born on October 6, 1961 would require that he bring the action of nullity within five years from his attaining majority status, which by our calculations would be no later than October 1979. The instant action was not filed until 1989. His action in nullity has, therefore, prescribed.
For the assigned reasons, the judgment of the court of appeal is affirmed.
AFFIRMED.
NOTES
[*] Cole, J., assigned to participate in decision of case argued prior to his retirement.