655 So.2d 482 (1995)
SHELL OIL COMPANY
v.
Donna Ann Caillet JACKSON, Alfred Leroy Caillet, and Raymond J. Caillet.
No. 94 CA 1267.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
Rehearing Denied June 21, 1995.
Douglass V. Freret, II, New Orleans, for plaintiff-appellee.
Roy Maughan, Baton Rouge, for defendants-appellants.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
SHORTESS, Judge.
Donna Ann Caillet Jackson, Alfred Leroy Caillet, and Raymond J. Caillet (defendants) filed an action against Shell Oil Company (plaintiff) for unpaid worker's compensation benefits, penalties, interest, costs, and attorney fees. The suit (suit one) was based on a 1957 accident which killed their father.[1] A *483 default judgment was rendered by Judge Jack Marionneaux on November 15, 1991. The judgment awarded defendants $14,600.00 "plus penalties of Twelve per cent (12%), legal interest from February 27, 1957 until paid, attorney's fees according to law and all cost of these proceedings" (Marionneaux's judgment).
On February 6, 1992, after the appeal delays had run and Marionneaux's judgment had become final, plaintiff filed this action to annul (suit two). Plaintiff alleged the trial court did not have subject matter jurisdiction and Marionneaux's judgment was obtained by ill practices.
Plaintiff next filed a "Motion for Summary Judgment and Alternatively for Partial Summary Judgment," requesting that the court declare Marionneaux's judgment a nullity or, alternatively, nullifying the interest award. After a hearing, Judge Thomas W. Tanner, pro tempore, rendered an "opinion" which was filed July 31, 1992, stating that plaintiff "failed to prove that the default judgment is invalid or that it was obtained by ill practice. Therefore, the plaintiff's motion is denied and the case is dismissed"[2] (Tanner's opinion). This opinion directed defendants to prepare a judgment, but the record does not contain a formal judgment. However, the parties have treated this opinion as a judgment.
Plaintiff did not appeal Tanner's opinion or move for a new trial. Instead, more than a month later, on September 9, 1992, plaintiff filed a "Memorandum in Support of Motion for Calculation of Judgment,"[3] seeking clarification and calculation of the interest awarded by Marionneaux's judgment.
Judge Tanner on September 9, 1992, filed the following "Opinion on Motion for Summary Judgment" which he had signed September 3:
Upon reconsideration of this Court's Opinion on plaintiff's Motion for Summary Judgment, the judgment shall be amended. The plaintiff's Motion for Partial Summary Judgment is granted. The judgment shall be amended to change the amount of interest, which shall be calculated from the date of judicial demand, as the defendants had originally requested in their original suit. The case is not dismissed.
This opinion was properly treated as a judgment (Tanner's second opinion). On November 20, 1992, defendants filed a petition with the trial court for devolutive appeal from this opinion. The record indicates this motion for appeal was still pending when the judgment before us on this appeal was rendered.[4]
The parties began negotiating a settlement, but they could not agree. Defendants' counsel at the time, on September 28, 1992, delivered a letter to plaintiff's counsel which stated the judgment was executory and demanded delivery of "the undisputed amount" of $23,500.00 to defendants' counsel's office. The letter said certain property owned by plaintiff would be seized and sold to satisfy the judgment if the check was not tendered by the following morning.
The same day plaintiff responded, stating it calculated the "undisputed amount" at $21,733.11, but tendered a check for $23,500.00 nevertheless "to avoid your inappropriate and improper threat of seizure." The letter continued:

*484 If any further action is taken by you or your client regarding any matter arising in connection with the injuries or death of Mr. Caillet on about December 27, 1956, Shell will seek reimbursement for the amount in excess of $21,733.11. Additionally, Shell will seek reimbursement for costs and expenses incurred in defending against such actions and defending against seizures or attempted seizures of property.
Finally, given your clients' inappropriate conduct in failing to sign a Receipt and Release, any prior settlement offer is hereby revoked. Given the fact that Shell feels that it has satisfied any judgment in this matter, and that your clients would have no additional claims or rights against Shell, any further claim or lawsuit will be strongly defended, with a counter-claim being brought for frivolous and malicious prosecution.
The following day, a check for $23,500.00 was delivered to defendants' counsel. No release papers accompanied the check, and the check contained no notations. A letter accompanied the check stating:
Given Shell's payment and satisfaction of the judgment in the Caillet v. Shell litigation, I expect that you will file and enter a Satisfaction of Judgment. If I do not have a certified copy of that Satisfaction of Judgment by 5:00 today, Shell will seek reimbursement and return of this check paid in Satisfaction of Judgment.
Defendants' counsel submitted to plaintiff's counsel a "Receipt Release and Partial Satisfaction of Judgment," which released plaintiff for the "undisputed amount" and reserved other rights until a final decision was rendered in suit two. Plaintiff rejected this release, stating:
Since there is no valid judgment for an amount in excess of $23,500.00 (and in fact, there is no valid judgment in excess of $21,399.00),[5] the payment which you have received is a full Satisfaction of Judgment. Apparently you have a misconception about the effect of Judge Tanner's ruling. The only issue remaining in the action of nullity is whether the entire judgment of Judge Marionneaux should be annulled.
(Footnote added.)
On March 17, 1993, plaintiff filed a "Motion for Entry of Satisfaction of Judgment." A hearing was held June 4, 1993, and judgment was rendered by Judge Sharah H. Mulmore and filed July 2, 1993, granting plaintiff's motion (Mulmore's judgment). Defendants' motion for new trial was denied, and this appeal followed.[6]
The trial court in written reasons found:
Though the amount involved was disputed by the parties, once the check was tendered the [debtor's] offer was so made and the subsequent cashing of the check by the creditors concluded the mutual consent necessary to effect accord and satisfaction. The creditor could have very well retained any rights they had by rejecting the check but having cashed the check, the creditors cannot now contend that the condition upon which the debtor made the offer did not exist.
The sole issue before the court is whether Mulmore's judgment finding a compromise was reached between the parties was manifestly erroneous.
The supreme court recently addressed compromise agreements in two opinions: Daigle v. Clemco Indus., 613 So.2d 619 (La. *485 1993), and Brown v. Drillers, Inc., 93-1019 (La. 1/14/94), 630 So.2d 741.[7]
A transaction or compromise is an agreement between two or more persons, who, for the purpose of preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. La.C.C. art. 3071; Daigle, 613 So.2d at 622. Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed. La. C.C. art. 3073; Daigle, 613 So.2d at 622. They do not extend to differences which the parties never intended to include in them. La.C.C. art. 3073.
The Civil Code also requires that "[t]his contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding." La.C.C. art. 3071.[8] The purpose of the writing requirement is "to serve as proof of the agreement and the acquiescence therein." Bourgeois v. Franklin, 389 So.2d 358, 361 (La.1980). The supreme court has held this requirement implies the agreement must be evidenced by documentation signed by both parties. However, the requirement may be satisfied when the signed offer and acceptance are contained in separate writings as long as when they are read together the instruments outline each party's obligation to the other and evidence each party's acquiescence in the agreement. Felder v. Georgia Pacific Corp., 405 So.2d 521 (La.1981); LeBlanc v. Fidelity Fire & Cas. Ins. Co., 93-0146 (La.App. 1st Cir. 3/11/94), 633 So.2d 891.
In this case, defendants cashed the check tendered by plaintiff. The check contained no notation and was not accompanied by any release documentation submitted by plaintiff.
Donna Caillet Jackson testified that prior to the exchange of letters referred to herein, plaintiff sent defendants a twenty- to thirty-page settlement document which released all claims. This document was rejected by defendants. Defendants' counsel stated clearly in his demand letter: "Your release is totally unacceptable."
The demand made by defendants' counsel was for the "undisputed amount based on Judge Tanner's ruling." The parties already had filed a motion seeking to appeal Tanner's amended judgment.
In Felder, the court found the compromise agreement was perfected when defendants accepted plaintiff's offer by mailing plaintiff a draft for the agreed-upon amount, which contained a notation that the draft was sent for "settlement in full of all claims." 405 So.2d at 524.
In this case, defendants clearly referred to the "undisputed amount" as $23,500.00. Plaintiff calculated the "undisputed amount" in one letter at $21,733.11 and in another at $21,399.00, but submitted the amount demanded by plaintiff "to avoid your inappropriate and improper threat of seizure."[9]
According to Raymond J. Caillet, the partial satisfaction papers were signed by defendants *486 before the check was cashed. Donna C. Jackson testified defendants understood the "undisputed amount" was principal, a 12% penalty, and interest from date of judicial demand, "which was about a year's worth of interest."
Caillet testified:
We understood from the very beginning that this was a partial settlement, because... a lot of things were happening at that time. They were going back and forth making different offers and things like that. And, finally we couldn't make the right offers and we decided to take what was offered to us from the Court and pursue it further.
(Emphasis ours.)
A compromise is valid only if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached. Perault v. Time Ins. Co., 633 So.2d 263 (La.App. 1st Cir. 1993), writs denied, 93-3133 (La. 2/11/94), 634 So.2d 833, and 93-3156 (La. 2/11/94), 634 So.2d 834. This exchange of letters does not clearly indicate the parties had any mutual agreement about what was being settled. There was no meeting of the minds.
Furthermore, the letters exchanged were insufficient to meet the writing requirement of Civil Code article 3071. Even though separate documents may evidence a compromise, the documents must indicate the intent of the parties clearly and unambiguously.
The burden of proof in the present case is on plaintiff to establish the requisites for a valid compromise, including the parties' intent to settle the differences being asserted in the action in which it is interposed. Brown, 630 So.2d at 741. Plaintiff failed to establish the parties had mutual intent to settle all aspects of the litigation and also failed to meet the requirements of Civil Code article 3073.
Therefore, the judgment of the trial court granting plaintiff's motion for entry of satisfaction of judgment was manifestly erroneous and must be reversed. This case is remanded, and the trial court is hereby ordered to sign defendant's motion for devolutive appeal from Tanner's judgment of September 9, 1992, which was pending when this appeal was filed. All costs of this appeal are assessed to plaintiff, Shell Oil Company.
REVERSED AND REMANDED WITH ORDER.
LOTTINGER, C.J., concurs.
NOTES
[1] The petition also alleged detrimental reliance on various unfulfilled promises plaintiff made to the Caillet widow in exchange for her forbearance on her claim against plaintiff.
[2] We note that defendants had not filed a cross motion seeking dismissal of the suit.
[3] The motion for calculation is not in the record.
[4] Defendants argue that the judgment ordering entry of satisfaction of judgment, which is the subject of this appeal, effectively prevents their appeal from Tanner's amended judgment. We do not address the propriety of Tanner's amended judgment as it is not yet before us.

Nevertheless, our review of the procedural history of this case compels us to observe that the Code of Civil Procedure does not provide for partial relief in a nullity action.
We also observe that plaintiff's apparent request for "Calculation of Judgment" sought calculation of a prior final judgment which was the subject of the nullity suit. It did not seek a calculation or recalculation of a judgment rendered in the nullity action.
While the trial court may on its own motion amend its own judgment at any time to correct a calculation error or make non-substantive corrections, Tanner's first ruling contained no calculations or non-substantive errors. See La.C.C.P. art. 1951.
[5] This calculation conflicts with the calculation plaintiff stated in its September 29 letter responding to defendants' demand letter. However, for purposes of this appeal the conflict is irrelevant. Nowhere in the record is there any indication how either party reached its respective calculation of the "undisputed amount." Because this issue is not before us, we do not address it.
[6] This case tortures the Code of Civil Procedure. We are compelled by the history of this case to observe that plaintiff is in this procedural morass because it failed to defend itself in suit one, failed to seek a new trial when the judgment was rendered, and failed to appeal. Instead, after Marionneaux's judgment was final, plaintiff brought this nullity action.

We find it significant and notable that nowhere in the nullity action does plaintiff explain why it failed to defend or appeal suit one, nor does it allege it was never served or had no knowledge of the original proceeding.
[7] Daigle specifically addressed whether the spouse and children of a tortiously injured person could validly compromise their potential wrongful death claims against the alleged tort-feasor. Daigle, 613 So.2d at 620.

Brown addressed whether a pre-death release executed by both a husband and wife of all their claims arising out the husband's personal injuries, but not expressly referring to his death as a potential consequence of the claimed tort, encompasses the wife's subsequently accruing wrongful death claim. Brown, 630 So.2d at 744.
[8] The second paragraph of this article was amended in 1981. The article previously read, "[t]his contract must be reduced into writing."
[9] Plaintiff, notably, had other alternatives than making the payment demanded. It could have sought an injunction preventing seizure, or it could have sued for damages due to unlawful seizure if the property was improperly seized. This record is replete with opportunities plaintiff missed or chose not to pursue which might have prevented, settled, or ended this litigation and perhaps the original litigation. At a minimum, plaintiff was remiss in delivering a check for $23,500.00 without any notation, without any unambiguous prior agreement, and without any release documents.